HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNIVERA, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOHN TERHUNE; TERHUNE ENTERPRISES, LLC; MARSHALL DOUGLAS; DOUGLAS ENTERPRISES INTERNATIONAL, LLC; JOE LAND, INC.; and LGI MEDIA, INC (a/k/a LAND GROUP INTERNATIONAL, INC.), <br><br> Defendants. | Case No. C09-5227 RBL <br><br> ORDER ON MOTION TO DISMISS [Dkt. #88] |

THIS MATTER is before the court on Plaintiff Univera's Motion to Dismiss [Dkt. #88]. Univera seeks dismissal of Defendants' fourth, fifth, sixth, seventh, and eighth counterclaims [Dkt. #82, Answer to Amended Complaint and Counterclaims]. Defendants Terhune Enterprises LLC, Douglas Enterprises LLC, and LGI Media Inc (collectively "Entity Defendants") were independent distributors for Univera, a provider of health supplements. Entity Defendants were managed, respectively, by Defendants John Terhune, Marshall Douglas, and Joe Land (collectively "Individual Defendants").

The case arises from the termination of business relations between Univera and Defendants in early 2009. More specifically, the case arises from a series of business decisions

Order - 1

by Univera and Defendants leading up to their falling out, and the subsequent contractual disputes, threats, and accusations between Univera and Defendants.

Univera's Amended Complaint [Dkt. #72] alleges that Defendants breached contracts with Univera and tortiously interfered with Univera's contractual relationships and business expectancies.

Defendants assert eight counterclaims[1] [Dkt. #82] for (1,2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) unjust enrichment, (5) tortious interference with business expectancies, (6) unfair competition, (7) quantum meruit, and (8) defamation.

Univera moves to dismiss [Dkt. #88] Defendants' fourth, fifth, sixth, seventh, and eighth counterclaims under Federal Rule of Civil Procedure 12(b)(6). Univera argues that Entity Defendants' unjust enrichment and quantum meruit counterclaims should be dismissed because their subject matter is governed by express and enforceable contracts. Univera argues that Individual Defendants' tortious interference counterclaim should be dismissed because there was no legally improper interference with any legally cognizable business expectancy. Univera argues that Individual Defendants' unfair competition counterclaim should be dismissed because Univera's conduct has not affected the public interest. Univera argues that that Individual Defendants' defamation counterclaim should be dismissed because it was not pled with sufficient specificity.

Defendants contend that they have alleged sufficient facts to support each of their counterclaims, but request that the court grant leave to amend their pleadings if it determines otherwise. [*See* Dkt. #97, Opposition to Motion to Dismiss].

For the reasons that follow, Univera's Motion to Dismiss [Dkt. #88] is GRANTED in part and DENIED in part. Defendants' fourth and seventh counterclaims, as well as the common law aspect of their sixth counterclaim, are DISMISSED with prejudice. Defendants' request for leave to amend is GRANTED with respect to the statutory aspect of their unfair competition counterclaim, which will be dismissed unless facts sufficient to support such a

---

[1] Counterclaims one, two, three, four, and seven are brought by Entity Defendants. Counterclaims five, six, and eight are brought by Individual Defendants.

claim are pled within 21 days. Univera's Motion to Dismiss is DENIED with respect to Defendants' fifth and eighth counterclaims.

**I.   FACTS**

Univera provides natural health and dietary supplements through a network of independent distributors. It engages individuals and businesses as independent contractors, or "associates," to sell Univera products and build a network of others to do the same. A person or business who joins Univera under a particular associate's network becomes a member of that associate's "downline." Associates earn commissions for their sales of Univera products and for those by their downline. To become a Univera associate, a person or business must sign an "associate agreement," which incorporates by reference Univera's Policies and Procedures. The associate agreement is typically the only contract between Univera and an associate.

Entity Defendants became Univera associates in 2004. They were "Blue Diamond" distributors, the highest level in the Univera distribution network. Terhune and Douglas were managing members of their respective associate businesses, while Land was an officer of LGI Media. Individual Defendants worked extensively and closely with Univera to build strong downline networks under their respective entities.

In August, 2007 Univera made a series of business decisions and initiatives with which Individual Defendants did not agree. These decisions led to logistical and marketing problems for Defendants and other Univera associates. Beginning in late 2008, Individual Defendants entered into discussions with Qivana LLC, a start-up network marketing company positioned to compete directly with Univera. In January, 2009 Terhune and Douglas quit Terhune Enterprises and Douglas Enterprises to pursue their new business ventures, leaving their wives to run the Univera associate businesses. Shortly thereafter, Land similarly left LGI Media.

Univera claims that Individual Defendants have recruited associates away from Univera to join Qivana. Univera also alleges that Individual Defendants have made disparaging comments about Univera and its management, and have urged associates to stop meeting as Univera distributors but continue meeting as Qivana distributors.

On February 20, 2009 Univera sanctioned Terhune Enterprises and Douglas Enterprises and suspended their status as associates. Univera subsequently took the same measures for LGI Media. Since the suspensions, Univera has not paid commissions or bonuses to Entity Defendants. Univera has also refused to renew Entity Defendants' associate agreements, effectively terminating their associate relationships with Univera.

Defendants claim that at a meeting on March 17, 2009 Univera threatened to sue and sanction associates who left Univera to join Individual Defendants. Defendants also claim that Univera spread false information to various associates regarding Individual Defendants' business ethics and past criminal activity.

Defendants' counterclaims allege damages caused by various Univera actions, including withholding commissions and making threatening and defamatory statements. Univera now seeks dismissal of Defendants' fourth through eighth counterclaims.

**II.    DISCUSSION**

**A.    Federal Rule of Civil Procedure 12(b)(6) Standard**

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Review is limited to the content of the complaint [and properly incorporated documents], and all allegations of material fact must be taken as true, and construed in the light most favorable to the non-moving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). Under *Bell Atlantic Corp. v. Twombly*, a litigant cannot simply recite the elements of a cause of action to avoid dismissal under this Rule. He must instead "provide the grounds of his entitlement to relief, which requires more than labels and conclusions." 127 S.Ct. 1955, 1964-65 (2007). The litigant must plead a claim that moves "across the line from conceivable to plausible." *Id*. at 1974.

If a Rule 12(b)(6) motion to dismiss is granted, the court may either grant leave to amend the complaint or order dismissal of the action. <u>Federal Civil Procedure Before Trial</u> § 9:283 (2010). Dismissal under 12(b)(6) is usually with prejudice to re-filing. *Id.* (*citing Carter*

*v. Norfolk Comm. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985)). Dismissal with prejudice is warranted only when the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency. *Id*. (*citing Firestone v. Firestone*, 76 F.3d 1205, 1209 (DC Cir. 1996)). As a practical matter, leave to amend is almost always granted by the courts. *Id*. at § 9:286 (*citing* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires")).

### B.     Counterclaim #s 4 & 7: Unjust Enrichment, Quantum Meruit

Entity Defendants bring two quasi-contract counterclaims, unjust enrichment and quantum meruit. Entity Defendants claim that Univera has been unjustly enriched by retaining commissions and bonuses owed to them. Entity Defendants also claim that they are entitled to compensation under quantum meruit because Univera has retained Entity Defendants' downline networks. Univera argues that Entity Defendants' quasi-contract counterclaims should be dismissed because the subject matter of those counterclaims is governed by express contracts between Univera and Entity Defendants. Entity Defendants respond that pleading alternative and inconsistent claims is permitted under the Federal Rules of Civil Procedure.

"A contract implied in law, or 'quasi contract', arises from an implied duty of the parties not based on consent or agreement; it is based on the prevention of unjust enrichment." *MacDonald v. Hayner*, 43 Wash.App 81, 85 (Div. 1, 1986) (*citing Heaton v. Imus*, 93 Wash.2d 249, 254 (1980)). The three elements required for an unjust enrichment claim are (1) a benefit conferred on one party by another; (2) appreciation and knowledge of the benefit by the party receiving it; and (3) acceptance of the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value. *See, e.g., Dragt v. Dragt/DeTray, LLC*, 139 Wash.App. 560, 576 (Div. 2, 2007). "Unjust enrichment encompasses the doctrine of quantum meruit…[they] are related doctrines; the former is a broader concept that encompasses the latter." *Id*.

"A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract." *MacDonald*, 43 Wash.App at 85-86 (*citing Chandler v.*

*Wash. Toll Bridge Authority*, 17 Wash.2d 591, 604 (1943)) (dismissing plaintiff's unjust enrichment claim which sought to recover more than the amount agreed upon in the relevant express contract). "[W]here the rights of the parties are governed by an express and enforcible contract, the law will not imply another or different contract… ." *Chandler*, 17 Wash.2d at 608. Yet, where the conduct of one or more parties to an express contract is removed from the contract's subject matter, Washington courts have allowed recovery for such conduct under unjust enrichment. *See Pierce County v. State*, 144 Wash.App 783, 829-30 (Div. 2, 2008) (allowing Pierce County to bring a quasi-contract claim for long-term medical care it provided because the express contracts governing mental health care for Pierce residents did not address the county's responsibility for providing such care).

Entity Defendants' unjust enrichment counterclaim is based on Univera's failure to pay commissions and bonuses allegedly owed to them. This mirrors Entity Defendants' second counterclaim alleging breach of contract based, in part, on Univera's withholding of commissions. Entity Defendants and Univera agree that they are bound by express and enforceable contracts with each other, namely "associate agreements." [Dkt. #82, Answer to Amended Complaint; Dkt. #72, Amended Complaint]. These agreements incorporate the December, 2008 Univera Policies and Procedures, as Univera did not suspended Entity Defendants' associate status and withhold their commissions until February, 2009[2]. [*See* Dkt. #82]. Section 5 of Univera's Policies and Procedures specifically and thoroughly addresses the computation and distribution of commissions and bonuses for associates. [*See* Dkt. #72, at Ex. E § 5]. Section 13 addresses the effect that terminating an associate's relationship with Univera has on that associate's commissions. *Id.* at § 13. Any outstanding commissions or bonuses owed by Univera to Entity Defendants are governed by these express contractual terms. Therefore, Entity Defendants' claim for commissions and bonuses withheld by Univera must be brought under breach of contract, not unjust enrichment.

---

[2] Section 1.4 of the December 2008 Univera Policies and Procedures provides: "By signing the Associate Agreement, or by accepting commission checks or other payments or awards from Univera, an Associate specifically agrees to abide by these Policies and Procedures… ." [Dkt. #72, First Amended Complaint, at Ex. E § 1.4].

Entity Defendants base their quantum meruit counterclaim on Univera retaining Entity Defendants' downline networks without paying a "fair value" for them. [Dkt. #82, Answer to Amended Complaint]. Univera's business is premised on its associates building networks of Univera distributors. In return, Univera pays its associates a commission for each sale by members of their downline. Thus, the value paid for an associate's downline network is dictated by Univera's payment system of commissions and bonuses enumerated in section 5 of the Policies and Procedures. Section 13.15 of Univera's Policies and Procedures provides that termination of an associate relationship, whether voluntary or involuntary, "[e]ffectively waives any and all claims to property rights or any interest in or to the Associate's former Downteam organization." [Dkt. #72, Amended Complaint, at Ex. E § 13.15(A)(ii)]. Univera's right to retain former associates' downlines and the compensation paid for those downlines are governed by Univera's Policies and Procedures. Accordingly, Entity Defendants' claim seeking payment for their former downline networks cannot be brought under an implied contract.

Entity Defendants cannot allege different or additional facts that would overcome the undisputed fact that their quasi-contract counterclaims directly overlap their express contractual agreements with Univera. Therefore, Entity Defendants' fourth and seventh counterclaims for unjust enrichment and quantum meruit are DISMISSED with prejudice.

**C.     Counterclaim #5: Tortious Interference with Business Expectancies**

Individual Defendants assert a counterclaim for tortious interference with business expectancies. They claim that Univera used threats of lawsuits to intimidate associates from joining Individual Defendants' business ventures. Defendants assert that Univera's threats were made in bad faith and were not based on legally protected interests. Univera contends that Individual Defendants do not have legally recognized business expectancies with members of their downlines[3], and that Defendants have failed to allege any legally improper conduct by Univera.

Tortious interference with business expectancies requires proof of five elements: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the

---

[3] Individual Defendants' downlines refer to the downlines of their respective associate businesses.

relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that the defendant [Univera] interfered for an improper purpose or used improper means; and (5) resulting damage. *See, e.g., Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Group, Inc.*, 114 Wash.App 151, 157-58 (Div. 1, 2002). "A valid business expectancy includes any prospective contractual or business relationship that would be of pecuniary value." *Id*. at 158 (*citing* Restatement (Second) of Torts § 766B (1979)).

"Interference is for an improper purpose if it is wrongful by some measure beyond the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession." *Id.* (*citing Pleas v. City of Seattle*, 112 Wash.2d. 794, 804 (1989)). Restatement (Second) of Torts provides that threatening to enforce a legally protected interest may be proper when done in good faith:

> One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

Restatement (Second) of Torts § 773 (1977). This defense is "of narrow scope and protects the actor only when (1) he has a legally protected interest, and (2) in good faith asserts or threatens to protect it, and (3) the threat is to protect it by appropriate means." *Id*. at cmt. a.

Defendants allege that Univera threatened to sue any associate in Entity Defendants' downlines who left Univera and who in turn were followed by any member of their own downline. Defendants also allege that Univera stated it was going to sue members of Entity Defendants' downlines because those members "could not afford to mortgage their houses to fight back against Univera." [Dkt. #82, Counterclaims]. Defendants argue that Univera's threats were bad faith attempts to intimidate members of Entity Defendants' downlines from leaving Univera to join Individual Defendants' new business ventures.

Univera's Policies and Procedures prohibit former upline leaders, such as Individual Defendants, from recruiting associates away from Univera. [Dkt. #72, Amended Complaint, at

Ex. E §§ 2.7(D), 3.10(H)][4]. The policies allow associates to pursue other business ventures on their own initiative. Defendants claim that Univera's threats were not limited to suppressing recruitment. They claim that Univera went beyond enforcing its legally protected interests by threatening to sue associates who chose to leave of their own free will. Defendants assert that Univera's threats and intimidation were intended to interfere with prospective and lawful business relationships between Individual Defendants and Univera associates. Defendants claim that those relationships would have been financially valuable to Individual Defendants.

Taking Defendants' allegations as true, it cannot be said as a matter of law that Univera confined its actions to pursuing legally protected interests in good faith and by appropriate means. Nor can it be said that Individual Defendants lacked legally cognizable business expectancies with members of their downlines. Accordingly, Univera's Motion to Dismiss Individual Defendants' fifth counterclaim for tortious interference with business expectancies is DENIED.

### D. Counterclaim #6: Unfair Competition

Individual Defendants assert a counterclaim for unfair competition. They allege that through misinformation, threats, and intimidation, Univera has deterred potential customers and associates from joining or transacting business with Individual Defendants. Defendants argue that Univera's actions have deprived Individual Defendants of the "fruits of their labor," namely business relationships and customers. [Dkt. #82, Counterclaims]. Univera argues that Defendants have failed to allege facts that support an unfair competition claim, both at common law and under the Washington Consumer Protection Act ("WCPA").

#### 1. Common Law Unfair Competition

Common law unfair competition is based on a business or person deceiving the buying public by appropriating the name, symbols, or goods of a competitor and passing them off as its own. *See Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wash.2d 740, 742-43 (1973); *see also Whole Grain Wheat Distribution Co. v. Bon Marche*,

---

[4] Section 3.10(F) of the Policies and Procedures prohibits a former Diamond level associate from recruiting other associates for one year following termination. Section 2.7(D) provides that members of an entity associate are jointly and severally liable for any obligation to Univera.

154 Wash. 455, 461-62 (1929). Defendants and Univera agree that Washington courts have described common law unfair competition as "passing off." [Dkt. #88, Motion to Dismiss; Dkt. #97, Opposition to Motion to Dismiss].

Defendants do not allege that Univera passed off another's products, names, or symbols as its own, and there is no evidence that it did. Rather, Defendants argue that common law unfair competition is not limited to "passing off" because "Washington courts have recognized that '[t]here is no limit to human inventiveness in this field.'" [Dkt. #97, Opposition to Motion to Dismiss (*quoting Ivan's Tire Service Store, Inc. v. Goodyear Tire & Rubber Co.*, 517 P.2d 229, 237 (Div. 3, 1973))]. Yet, *Ivan's Tire* confirms that common law unfair competition is defined as "passing off." *Ivan's Tire*, 517 P.2d at 237. *Ivan's Tire* refers to human inventiveness only in examining the legislative purpose behind expanding the definition for statutory unfair competition. *Id*. The court is unwilling to expand common law unfair competition to encompass a case that has nothing to do with Univera passing off another's goods as its own.

Defendants cannot allege different or additional facts, consistent with the facts pled, which would include the passing off required for common law unfair competition. Therefore, the common law aspect of Individual Defendants' sixth counterclaim for unfair competition is DISMISSED with prejudice.

**2.     Statutory Unfair Competition (Washington Consumer Protection Act)**

The WCPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. Private parties are entitled to relief pursuant to the WCPA when "(1) the defendant has engaged in an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) the plaintiff has suffered injury in his or her business or property, and (5) a causal link exists between the unfair or deceptive act and the injury suffered." *Leingang v. Pierce Cnty. Med. Bureau, Inc*., 930 P.2d 288, 296 (1997). In evaluating whether a party satisfies the "public interest" prong of WCPA unfair competition, courts look to several factors:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

*Aubrey's R.V. Center, Inc. v. Tandy Corp.*, 46 Wash.App. 595, 609 (Div. 3, 1987) (*citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 790 (1986)).

This case involves a unique set of circumstances. It is essentially an ugly falling out between Univera and a few of its highest-level associates and managers. Defendants do not allege that Univera's acts are part of its normal or generalized course of conduct. Rather, they allege that Univera's acts were specifically intended to deter Defendants' downline associates from leaving Univera following Individual Defendants' departure. Defendants do not allege facts regarding Univera's conduct prior to 2004. Instead, Defendants focus on Univera's conduct that is directly relevant to this dispute, and how Univera's actions have affected Individual Defendants. Because the alleged conduct is confined to this unique dispute, there is no real and substantial potential for repetition of such conduct. Defendants do not allege that any consumers have been affected by Univera's conduct. Only the first of the five factors for determining impact on the public interest is satisfied by the allegations here: acts complained of were committed in the course of Univera's business.

Defendants' factual allegations applied to the relevant factors do not demonstrate that Univera's conduct has affected the public interest, as required for a WCPA unfair competition claim. Nonetheless, it is at least conceivable that Defendants could plead additional facts regarding Univera's impact on the public interest. Defendants' request for leave to amend is therefore GRANTED with respect to the statutory aspect of Individual Defendants' sixth counterclaim for unfair competition. That counterclaim will face dismissal unless Defendants amend their pleadings to support a WCPA unfair competition claim within 21 days.

### E.   Counterclaim #8: Defamation

Individual Defendants assert a counterclaim for defamation. They allege that Univera representatives intentionally and recklessly made false statements about Individual Defendants

to various Univera associates. Individual Defendants claim that these statements impugned their character, integrity, and business acumen, resulting in financial damages. Univera argues that Defendants have not met the heightened pleading requirements for a defamation claim, and that the alleged defamatory statements were matters of opinion, not fact.

The four elements of a defamation claim are (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages. *See, e.g., Herron v. KING Broad. Co.*, 112 Wn.2d 762, 768 (1989). "Before the truth or falsity of an allegedly defamatory statement can be assessed, a plaintiff must prove that the words constituted a statement of fact, not an opinion…[this] is a threshold question of law for the court." *Robel v. Roundup Corp.*, 148 Wash.2d 35, 55 (2002). "In making this determination, the court should consider whether the allegedly defamatory expression, in context, could reasonably be understood as describing actual facts about the plaintiff." *Hoppe v. Hearst Corp.*, 53 Wash.App. 668, 672 (Div. 1, 1989) (*citing Pring v. Penthouse Int'l,* 695 F.2d 438, 442 (10th Cir. 1982)).

Univera does not argue that Individual Defendants' defamation counterclaim fails to satisfy any of the four requisite elements. Univera only briefly notes that the alleged statements were based on opinion. Instead, Univera bases its argument predominantly on the Ninth Circuit case *Flowers v. Carville,* 310 F.3d 1118 (9th Cir. 2002). *Flowers* provides that a defamation claim which "lists the precise statements alleged to be false and defamatory, who made them and when" is sufficiently pled. *Id.* at 1131 (holding that a defamation claim providing the precise alleged defamatory statements, who made them, and when, did not face dismissal because it went beyond simply alleging that the plaintiff was "libeled with malice"). Univera makes the negative implication that a defamation claim must include these three elements to avoid dismissal. Univera argues that Individual Defendants omitted the "who" and "what" from their counterclaim.

Defendants pled Univera's allegedly defamatory statements, going so far as to quote key terms used by Univera representatives. Defendants allege that Univera representatives stated that one or all Individual Defendants had a "track record" of getting rich from "stealing" other people's groups from Amway and "a couple of other companies;" that Univera stated

Individual Defendants had stolen money from NetImpact; and that Univera had communicated false accusations of unprofessional conduct and described Individual Defendants as "morally bankrupt." [Dkt. #82, Counterclaims].

Defendants allege that these statements were made on or about March 17, 2009 at a Univera meeting in Lacey, WA. While Defendants did not initially plead the name of the Univera representative alleged to make the defamatory statements[5], they provided it in their response to Univera's motion. [Dkt. #97 (naming Tom Hoolihan, Univera's general counsel)]. Defendants did vaguely identify the "who" in their pleading as "Univera representatives." Univera's sole authority requiring a defamation claimant to plead exactly who made the defamatory statements comes from a negative implication that is not directly applicable here. Defendants' initial failure to plead a specific name alone does not warrant dismissal of the defamation counterclaim.

Turning to the issue of statements based on opinion versus those based on fact, it is important to note the context in which the alleged statements were made. *See Hoppe*, 53 Wash.App. at 672. Univera had a close and long-standing business relationship with Defendants. Univera allegedly made the defamatory statements in a meeting attended by various high-level associates, some of whom were members of Defendants' downlines. Those associates could reasonably have understood Univera's statements to be based on intimate knowledge obtained through various dealings with Defendants. Univera's statements could reasonably be taken as warnings of what to expect from working with Individual Defendants. Those warnings would presumably be based on private factual knowledge regarding Individual Defendants' business ethics and criminal history. Univera's statements may have been speculative. Nonetheless, it cannot be said as a matter of law that the statements could not reasonably have been understood as factual, given the surrounding circumstances. Further, at this point the truth or falsity of Univera's alleged statements cannot be determined.

---

[5] Defendants assert that they omitted the speaker's name in their counterclaim because they intended to hold Univera vicariously liable for the speaker's statements under respondeat superior, and thus identified him merely as a "Univera representative." [Dkt. #97, Response to Motion to Dismiss, at n.4].

Taking Defendants' allegations as true, it cannot be said as a matter of law that Individual Defendants failed to properly plead their defamation counterclaim, that the claim fails to meet the threshold requirement of alleging factual defamatory statements, or that the claim fails to satisfy any of the requisite elements. Therefore, Univera's Motion to Dismiss Individual Defendants' eighth counterclaim for defamation is DENIED.

## CONCLUSION

Univera's Motion to Dismiss [Dkt. #88] is DENIED in part and GRANTED in part. Defendants' fourth and seventh counterclaims, and the common law aspect of their sixth counterclaim, are DISMISSED with prejudice. Defendants' request for leave to amend is GRANTED with respect to the statutory aspect of their sixth counterclaim. That counterclaim will be dismissed unless Defendants file an amended complaint within 21 days alleging facts sufficient to support a WCPA unfair competition claim. Univera's Motion to Dismiss is DENIED with respect to Defendants' fifth and eighth counterclaims.

**IT IS SO ORDERED.**

Dated this 31st day of August, 2010.

*/s/ Ronald B. Leighton*
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

Order - 14